# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

JOHN EDWARD MITCHELL,

Plaintiff,

v.

CA DEPARTMENT OF CORRECTIONS AND REHABILITATION, *et al*.,

Defendants.

Case No. 1:24-cv-00522-JLT-BAM (PC)

FINDINGS AND RECOMMENDATIONS REGARDING DISMISSAL OF CERTAIN CLAIMS AND DEFENDANTS

(ECF No. 26)

**FOURTEEN (14) DAY DEADLINE**

Plaintiff John Edward Mitchell ("Plaintiff") is a state prisoner proceeding *pro se* in this civil rights action pursuant to 42 U.S.C. § 1983. On June 10, 2026, the Court screened Plaintiff's first amended complaint and directed him to file either a second amended complaint or a notice that he was willing to proceed only on his claim against Defendants Pompa and Furlong for excessive force in violation of the Eighth Amendment. (ECF No. 21.) Plaintiff's second amended complaint, filed on August 6, 2026, is currently before the Court for screening.[1] (ECF No. 26.)

## I. Screening Requirement and Standard

The Court is required to screen complaints brought by prisoners seeking relief against a

[1] Plaintiff also filed a request for judicial notice of an order in the matter of *Armstrong v. Newsom*, No. 94-cv-02307-CW, 2021 WL 933106 (N.D. Cal. Mar. 11, 2021). (ECF No. 27.) The Court finds it unnecessary to take judicial notice of the order for purposes of screening. Plaintiff's request is therefore DENIED.

governmental entity and/or against an officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). Plaintiff's complaint, or any portion thereof, is subject to dismissal if it is frivolous or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915A(b).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences." *Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted).

To survive screening, Plaintiff's claims must be facially plausible, which requires sufficient factual detail to allow the Court to reasonably infer that each named defendant is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 678 (quotation marks omitted); *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009). The sheer possibility that a defendant acted unlawfully is not sufficient, and mere consistency with liability falls short of satisfying the plausibility standard. *Iqbal*, 556 U.S. at 678 (quotation marks omitted); *Moss*, 572 F.3d at 969.

## II. Plaintiff's Allegations

Plaintiff is currently housed at Valley State Prison in Chowchilla, California. The events in the complaint are alleged to have occurred while Plaintiff was housed at Kern Valley State Prison ("KVSP"). Plaintiff names the following defendants: (1) T. Thompson, Corrections Officer; (2) Q. True, Corrections Officer; (3) M. Espinosa, Corrections Officer; (4) T. Rodriguez, Corrections Officer; (5) S. Furlong, Corrections Officer; (6) M. Arrezol, Corrections Officer; (7) M. Pompa, Corrections Officer; and (8) J. Kohler, Corrections Officer.

Plaintiff alleges he is an Armstrong Class Member with the Disability Placement Program code of DNM, which is the code for mobility impairment that requires special housing placement, job placement, and limits his use of stairs. Plaintiff wears orthopedic boots and medical braces for his knees and back. During the relevant time period, Plaintiff was prescribed Duloxetine for

pain radiating down his spine to his feet.

Plaintiff also alleges he is a Coleman Class Member and is being treated at the Enhanced Outpatient Program ("EOP") level of mental health care. EOP patients live in separate housing units with other EOP individuals where they receive group and individual counseling. Plaintiff alleges he suffers from anxiety and depression disorders. During the relevant time, he was prescribed Duloxetine to manage his anxiety disorder.

Plaintiff arrived at KVSP on or about September 24, 2019. Within days of his arrival, he filed a staff complaint/grievance against c/o Rodriguez due to delay in issuing Plaintiff's legal property. While in KVSP Ad-Seg #1, Plaintiff was housed on the same tier as an incarcerated person, "Mackey," who complained to anyone listening that he was taken into KVSP C-upper yard program office by c/o Pompa, where he was punched and kicked in the face, and could someone help him with writing a civil rights complaint. Plaintiff accommodated him by drawing up a draft that he believes was submitted under *Mackey v. Goss*. It was known by KVSP ASU #1 staff and incarcerated persons that Plaintiff filed § 1983 civil rights complaints against different CDCR employees/officers at different prisons.

On or about 1/21/20, while housed at KVSP in Ad-Seg #1, Plaintiff submitted motions under *Mitchell v. Davey, et al*, 1:16-cv-01148-DAD-EPG, seeking protections that included, but were not limited to, stopping KVSP ASU #1 from releasing him to any yard in KVSP because he believed he would be assaulted in retaliation to the complaints he submitted against ASU #1 officers, specifically Rodriguez and Thomson, who was a defendant in *Mitchell v. Davey, et al.*, 1:16-cv-01148-DAD-EPG. The case was dismissed for failure to exhaust administrative remedies and the district court denied all of the requests wherein Plaintiff sought protection from KVSP ASU #1 staff.

On 1/30/20, Plaintiff was taken to a Classification Committee in Ad- Seg at KVSP that was chaired by Thomspon. Plaintiff expressed to the committee that he wanted to remain in Ad-Seg until he could be transferred to a different prison for his protection due to the belief that if he remained at KVSP, he would be retaliated against with acts that include, but were not limited to, assault and false rules violation reports from other officers. Lt. Thompson said, "your going

whether you want to or not," and then he told C/O Rodriguez "bag and drag him if he don't want to come out the cell." Plaintiff asserts that "bag and drag" means forcibly pull him out the cell, which always results in excessive use of force. That night, c/os Rodriguez and Arrezola escorted Plaintiff without incident to KVSP C-upper yard building #7 cell #119. Within a couple minutes, incarcerated person Razaq entered the cell complaining "I got stabbed and they know it but because its by a unknown assailant they took me out of Ad-Seg and I didn't even go to classification because they knew I would complain about being stabbed again, the officers that brought me told me to 'fight' you and I could come back to Ad-Seg." (ECF No. 26 at 5-6.) Plaintiff told Razaq that he was being set up to assault him in retaliation and would he complete a declaration that they would send to the district to be filed under *Mitchell v. Davey, et al.*, 1:16-cv-01148-DAD-EPG, and within a couple days he was taken back to Ad-Seg #1.

On 2/27/20, Plaintiff walked to the C-upper patio area but was turned around by c/o Pompa because he did not have on his orthopedic boots. When he returned with the boots on, he walked to the medication dispensary window to receive Duloxetine. After asking the officer for his name so that he could submit a CDC 601 against the officer who made him put on his orthopedic boots. Plaintiff was told to "shut the fuck up . . . " (ECF No. 26 at 6.) When Plaintiff replied, "you shut the fuck up" as he gave Nurse E. Vitto behind the medical window his I.D. to scan for administrations records at approximately 6:30 a.m., officers Pompa and Furlong pushed Plaintiff up against the medical window, causing him to bust his lip open. Plaintiff then said, 'I'll see you in court," as they put him in mechanical restraints. Incarcerated person Jane Doe was also on the patio waiting in line to be given medication and stated that he saw what happened. Plaintiff was taken into the C-upper program office and was told to face a window that portioned the hallway from Officers True and Espinosa, who sat facing each other at a desk. C/o Pompa hit Plaintiff in the jaw with a closed fist. Plaintiff fell to the floor where he was kicked on the right side of his face twice. After regaining consciousness, Plaintiff was taken to a holding cell where he was strip searched by c/o Mendoza. From the holding cell room, Plaintiff heard a clerk/porter named Harmon. Plaintiff asked him not to mop up the blood evidence, but he was interrupted by Sgt. Espinosa, who was heard saying "Mop it up." (*Id.* at 7.) Soon after, the investigative

officers took photos of the freshly mopped floor. The ISU officers chose not to take any pictures of Plaintiff's bloody face. A medical van arrived at 8:25 a.m. and transported Plaintiff to Adventist Health Bakersfield, accompanied by c/o Lopez, who used a cell phone to take pictures of Plaintiff's swollen face. Plaintiff was treated for blunt force trauma. While at the hospital, Plaintiff believes his medication administration records were activated with the use of his I.D. card. The M.A.R. notes at 09:32 (PST) he "refused" his medication Duloxetine. (*Id.*) However, prison records show that Plaintiff did not return to KVSP ASU #1 until 13:13 hrs.

On 02/28/20, Plaintiff was interviewed by Lt. Thompson regarding the excessive use of force complaint. The video camera operator was Sgt Brown. During the interview, Sgt. Brown began to point the camera at a completed CDCR 7219 that documented Plaintiff's injuries, but was told "no no." Thompson then threw it in the trash. He called LVN Ruiz and told her to complete another one. After it was completed, Lt. Thompson handed Plaintiff Rules Violation Report #06972442, authored by M. Pompa, whose narration excluded S. Furlong, M. Mendoza, Sgt. Espinosa or True as being present at any time during the incident. However, Sgt. Espinosa later submitted a report claiming he was an active participant. S. Furlong also submitted a false Incident Report Summary in log # 03043. Lt. J. Hohler falsely documented that he was the use of force interviewer for staff complaint KVSP 20-00967.

On August 24, 2020, Plaintiff was informed by a CDCR dentist that the medical records from Delano Regional Center found "chronic bilateral nasal fracture w/mild depression. There is a tiny chronic facture of the medical left orbital wall w/mild displacement of orbital fat." (ECF No. 26 at 8.) Plaintiff was interviewed by Emma Cook, a paralegal. In this interview, Plaintiff gave a declaration under the penalty of perjury regarding the allegation of excessive use of force he experienced at Kern Valley State Prison. Plaintiff believes the declaration, along with numerous others, was submitted in the matter of *Armstrong v. Newsom*, #94-cv-02307 CW in the Northern District of California.

On 11/14/21, while at KVSP in Ad-Seg, Plaintiff was in a holding cage behind a door when he heard a loud voice announcing, "I gotta interview somebody." (ECF No. 26 at 8.) C/o Pompa's face appeared in the porthole window of the door and looked Plaintiff directly in his

eyes with an angry, menacing look mouthing some words as he turned his head from side to side. This brought Plaintiff fear and stress. It was intimidating. Plaintiff submitted a CDCR Grievance logged under #0190701. In the grievance, Plaintiff requested the body worn video recording and the Ad-Seg building footage. However, the reviewer chose not to complete the investigation. Another log #249192 regarding the matter in which the reviewer, John Doe #1, chose to review the AVSS for a date other than the day of the actual incident as a way to cover up c/o Pompa's misconduct. The grievance was returned late intentionally, so that the Office of Appeals would deem it "untimely" in furtherance of the cover up.

Plaintiff forwards claims for excessive force, retaliation, and violation of the Americans with Disabilities Act against Defendants Pompa and Furlong. Plaintiff additionally asserts a claim for conspiracy against Defendants Thompson, Kohler, True, Espinosa, Pompa, Furlong, and Rodriguez arising out of multiple events. As relief, Plaintiff seeks compensatory and punitive damages,

## III. Discussion

### A. Federal Rule of Civil Procedure 8

Pursuant to Federal Rule of Civil Procedure 8, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citation omitted). Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570, 127 S.Ct. at 1974). While factual allegations are accepted as true, legal conclusions are not. *Id.*; *see also Twombly*, 550 U.S. at 556–557.

Plaintiff's second amended complaint is not a short and plain statement of his claims. Plaintiff's complaint is lengthy, prolix, and includes extraneous allegations unrelated to his underlying claims. Plaintiff's inclusion of extraneous allegations makes it difficult to ascertain the basis for his claims and whether he states cognizable claims for relief.

///

**B. Federal Rules of Civil Procedure 18 and 20**

Plaintiff appears to assert unrelated claims against multiple defendants. Plaintiff may not bring unrelated claims against unrelated parties in a single action. Fed. R. Civ. P. 18(a), 20(a)(2); *Owens v. Hinsley*, 635 F.3d 950, 952 (7th Cir. 2011); *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007). Plaintiff may bring a claim against multiple defendants so long as (1) the claim arises out of the same transaction or occurrence, or series of transactions and occurrences, and (2) there are commons questions of law or fact. Fed. R. Civ. P. 20(a)(2); *Coughlin v. Rogers*, 130 F.3d 1348, 1351 (9th Cir. 1997). The "same transaction" requirement refers to similarity in the factual background of a claim. *Id.* at 1349. Only if the defendants are properly joined under Rule 20(a) will the Court review the other claims to determine if they may be joined under Rule 18(a), which permits the joinder of multiple claims against the same party.

Plaintiff's amended complaint improperly alleges unrelated claims against unrelated parties. For instance, Plaintiff cannot assert a claim related to events in January 2020 related to a Classification Committee involving Defendant Thompson and Rodriguez while simultaneously asserting an unrelated claim of excessive force in February 2020 involving Defendants Furlong and Pompa or events occurring more than one year later in November 2021. Simply because all events are alleged to have taken place at the same institution does not mean that they are related or that they are properly included in a single action.

**C. Eighth Amendment – Excessive Force**

The Eighth Amendment protects prisoners from inhumane methods of punishment and from inhumane conditions of confinement. *Morgan v. Morgensen*, 465 F.3d 1041, 1045 (9th Cir. 2006). The unnecessary and wanton infliction of pain violates the Cruel and Unusual Punishments Clause of the Eighth Amendment. *Hudson v McMillian*, 503 U.S. 1, 5 (1992) (citations omitted). Although prison conditions may be restrictive and harsh, prison officials must provide prisoners with food, clothing, shelter, sanitation, medical care, and personal safety. *Farmer v. Brennan*, 511 U.S. 825, 832–33 (1994) (quotations omitted).

"[W]henever prison officials stand accused of using excessive physical force in violation of the [Eighth Amendment], the core judicial inquiry is ... whether force was applied in a good-

faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 6-7; *Whitley v. Albers*, 475 U.S. 312, 320-21 (1986). The "malicious and sadistic" standard, as opposed to the "deliberate indifference" standard applicable to most Eighth Amendment claims, is applied to excessive force claims because prison officials generally do not have time to reflect on their actions in the face of risk of injury to inmates or prison employees. *See Whitley*, 475 U.S. at 320-21.

In determining whether force was excessive, the court considers the following factors: (1) the need for application of force; (2) the extent of injuries; (3) the relationship between the need for force and the amount of force used; (4) the nature of the threat reasonably perceived by prison officers; and (5) efforts made to temper the severity of a forceful response. *See Hudson*, 503 U.S. at 7. The absence of an emergency situation is probative of whether force was applied maliciously or sadistically. *See Jordan v. Gardner*, 986 F.2d 1521, 1528 (9th Cir. 1993) (en banc). Finally, because the use of force relates to the prison's legitimate penological interest in maintaining security and order, the court must be deferential to the conduct of prison officials. *See Whitley*, 475 U.S. at 321-22.

Liberally construed, Plaintiff's amended complaint states a cognizable claim against Defendants Pompa and Furlong for excessive force in violation of the Eighth Amendment.

**D. Retaliation**

Allegations of retaliation against a prisoner's First Amendment rights to speech or to petition the government may support a section 1983 claim. *Rizzo v. Dawson*, 778 F.2d 527, 532 (9th Cir. 1985); *see also Valandingham v. Bojorquez*, 866 F.2d 1135 (9th Cir. 1989); *Pratt v. Rowland*, 65 F.3d 802, 807 (9th Cir. 1995). "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567–68 (9th Cir. 2005); *accord Watison v. Carter*, 668 F.3d 1108, 1114-15 (9th Cir. 2012); *Silva*, 658 at 1104; *Brodheim v. Cry*, 584 F.3d 1262, 1269 (9th Cir. 2009).

In order to state a retaliation claim, a plaintiff must plead facts which suggest that retaliation for the exercise of protected conduct was the "substantial" or "motivating" factor behind the defendant's conduct. *Soranno's Gasco, Inc. v. Morgan*, 874 F.2d 1310, 1314 (9th Cir. 1989) (citation omitted). Mere allegations of retaliatory motive or conduct will not suffice, and not every allegedly adverse action will support a retaliation claim. *See Huskey v. City of San Jose*, 204 F.3d 893, 899 (9th Cir. 2000) (retaliation claim cannot rest on "the logical fallacy of *post hoc*, *ergo propter hoc*, literally, 'after this, therefore because of this'") (citation omitted)). In addition, the plaintiff must also plead facts which suggest an absence of legitimate correctional goals for the conduct he contends was retaliatory. *Rizzo*, 778 F.2d at 532.

Plaintiff alleges that Defendants Pompa and Furlong used excessive force in retaliation for Plaintiff's willingness to exercise his First Amendment rights: (1) to ask an officer without a name tag on his uniform to state his name so that he could use it to write up a complaint against them; (2) the right to assist incarcerated person Mackey with the filing of § 1983 complaint against Pompa; (3) to inform the court that KVSP officers attempted to coerce, intimidate, and threaten with harm incarcerated person Razaq from an unknown assailant unless he engaged the Plaintiff in a fight to go back to Ad-Seg after filing lawsuits against CDCR employees, like Thompson. (ECF No. 26 at 10.)

Plaintiff's conclusory allegations of retaliation by Defendants Pompa and Furlong are not sufficient to state a claim. The events alleged in the complaint do not demonstrate that Pompa and Furlong took any adverse action against Plaintiff *because of* Plaintiff's protected conduct. Plaintiff's allegations do not demonstrate that Furlong and Pompa allegedly used excessive force because Plaintiff asked for the name of officers or because Plaintiff intended to file a complaint. Plaintiff also does not adequately allege that Furlong and Pompa knew that Plaintiff assisted another inmate, informed the court regarding an inmate that was threatened to engage in a fight with Plaintiff, or the filing of any lawsuits. Plaintiff's conclusory allegations that Furlong and Pompa knew of these events are not sufficient.

**E. Americans with Disabilities Act ("ADA")**

The ADA provides, "no qualified individual with a disability shall, by reason of such

disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. The ADA defines "qualified individual with a disability" as "an individual with a disability who, with or without reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity." *Id.* § 12131(2).

To state a claim under Title II, the plaintiff must allege four elements: (1) the plaintiff is an individual with a disability; (2) the plaintiff is otherwise qualified to participate in or receive the benefit of some public entity's services, programs, or activities; (3) the plaintiff was either excluded from participation in or denied the benefits by the public entity, or was otherwise discriminated against by the public entity; and (4) such exclusion, denial of benefits or discrimination was by reason of the plaintiff's disability. *Simmons v. Navajo County, Ariz,* 609 F.3d 1011, 1021 (9th Cir. 2010); *McGary v. City of Portland*, 386 F.3d 1259, 1265 (9th Cir. 2004); *Weinreich v. Los Angeles Cnty. Metro. Transp. Auth.*, 114 F.3d 976, 978 (9th Cir. 1997).

To the extent Plaintiff intends to sue the individual named defendant for violation of his rights under the ADA, he may not "bring an action under 42 U.S.C. § 1983 against a State official in her individual capacity to vindicate rights created by Title II of the ADA." *Vinson v. Thomas*, 288 F.3d 1145, 1156 (9th Cir. 2002). The proper defendant in ADA actions is the public entity responsible for the alleged discrimination. *U.S. v. Georgia*, 546 U.S. 151, 153-54 (2006). State correctional facilities are "public entities" within the meaning of the ADA. *See* 42 U.S.C. § 12131(1)(A) & (B); *Pennsylvania Dep't. of Corr. v. Yeskey*, 524 U.S. 206, 210 (1998); *Armstrong v. Wilson*, 124 F.3d 1019, 1025 (9th Cir. 1997).

Plaintiff has not adequately alleged the elements to state a claim under Title II. Plaintiff's complaint lacks facts indicating what specific programs or services he was denied due to his disability. Vague and conclusory allegations regarding the right not to use his orthopedic boots are not sufficient.

Plaintiff also alleges Defendants Pompa and Furlong violated his rights under the ADA's

anti-interference provision, 42 U.S.C. § 12203(b), which makes it unlawful to "coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed, or on account of his or her having aided or encouraged any other individual in the exercise or enjoyment of, any right granted or protected by [the ADA]." *Id.* § 12203(b).

"The plain wording of 42 U.S.C. § 12203(b) preclude[s] a party from intimidating or coercing another party not to exercise his rights under the ADA, as well as barring interference against a person who has exercised his rights under the ADA. To state a claim for coercion under § 12203(b), a plaintiff must allege that when the defendant coerced, threatened, intimidated, or interfered, the plaintiff was exercising or enjoying a right protected by the ADA. For purposes of claims of a violation of 42 U.S.C. § 12203(b), the U.S. Court of Appeals for the Ninth Circuit has held that the requisite injury could consist of either the giving up of rights under the ADA, or some other injury which resulted from refusal to give up rights, or from the threat itself." *Weston v. CDCR*, No. 1:20-cv-00326-JLT-GSA-PC, 2022 WL 14125614, at *11 (E.D. Cal. Oct. 24, 2022), report and recommendation adopted sub nom. *Weston v. California Dep't of Corr. & Rehab.*, No. 1:20-cv-0326 JLT GSA (PC), 2022 WL 17093922 (E.D. Cal. Nov. 21, 2022) (citations omitted).

Plaintiff's amended complaint fails to allege that when the defendants allegedly coerced, threatened, intimidated, or interfered, he was exercising or enjoying a right protected by the ADA. Plaintiff contends that Defendants Pompa and Furlong violated the ADA's anti-interference provisions when (1) on 2/27/20, after coercing Plaintiff to return to his housing unit to put on his doctor prescribed orthopedic boots before being given access to his medication, an interference with his right to not wear the medical boots, and thereafter when Plaintiff asked for the name of S. Furlong who was not wearing his I.D. tag in order to submit a medical healthcare grievance and Plaintiff's face was slammed into a window, he was never issued his medication and he was taken into the program office and beaten; and (2) "M. Pompa on 11/14/21 intimidated and or threated the plaintiff after he was transported from C.S.P. SAC To K.V.SP. ASU #1 to lay over in Ad-Seg to attend the False Criminal Battery on a officer charge." (ECF No. 26 at 13.)

Plaintiff's attenuated allegations do not adequately allege that the complained of conduct had any nexus to Plaintiff's exercise or enjoyment of an ADA right.

**F. Conspiracy**

To state a claim for conspiracy under section 1983, Plaintiff must show the existence of an agreement or a meeting of the minds to violate his constitutional rights, and an actual deprivation of those constitutional rights. *Avalos v. Baca*, 596 F.3d 583, 592 (9th Cir. 2010); *Franklin v. Fox*, 312 F.3d 423, 441 (9th Cir. 2001). A plaintiff must allege facts with sufficient particularity to show an agreement or a meeting of the minds to violate the plaintiff's constitutional rights. *Miller v. Cal. Dep't of Soc. Servs.*, 355 F.3d 1172, 1177 n.3 (9th Cir. 2004) (citing *Woodrum* v. *Woodward County, Ok*, 866 F.2d 1121, 1126 (9th Cir. 1989)). The mere statement that defendants "conspired" is not sufficient to state a claim. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

The Ninth Circuit requires a plaintiff alleging a conspiracy to violate civil rights to "state specific facts to support the existence of the claimed conspiracy." *Olsen v. Idaho State Bd. of Med.*, 363 F.3d 916, 929 (9th Cir. 2004) (citation and internal quotation marks omitted) (discussing conspiracy claim under § 1985); *Burns v. County of King*, 883 F.2d 819, 821 (9th Cir. 1989) ("To state a claim for conspiracy to violate one's constitutional rights under section 1983, the plaintiff must state specific facts to support the existence of the claimed conspiracy." (citation omitted)).

Plaintiff's amended complaint fails to state a claim for conspiracy. Plaintiff has not adequately alleged a meeting of the minds. Plaintiff does not provide specific facts that show defendants had an agreement to violate his rights. His repetition of the factual allegations or his assertion that the acts alleged were unlikely to have been taken without an agreement are not sufficient.

**IV. Conclusion and Recommendation**

Based on the above, the Court finds that Plaintiff's complaint states a cognizable claim against Defendants Pompa and Furlong for excessive force in violation of the Eighth

Amendment. However, Plaintiff's complaint fails to state any other cognizable claim for relief against any other defendant. Despite being provided with the relevant pleading and legal standards, Plaintiff has been unable to cure the deficiencies. Further leave to amend is not warranted. *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000).

Accordingly, it is HEREBY RECOMMENDED that:

1. This action proceed on Plaintiff's second amended complaint, filed on August 6, 2026, against Defendants S. Furlong and M. Pompa for excessive force in violation of the Eighth Amendment.
2. All other claims and defendants be dismissed based on Plaintiff's failure to state claims upon which relief may be granted.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1). Within **fourteen (14) days** after being served with these Findings and Recommendations, Plaintiff may file written objections with the court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." **Objections, if any, shall not exceed fifteen (15) pages. Any pages filed in excess of the 15-page limit may not be considered. Exhibits shall not be filed with objections, but they may be referenced by the document and page number. No new exhibits may be filed with objections.** Plaintiff is advised that failure to file objections within the specified time may result in the waiver of the "right to challenge the magistrate's factual findings" on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 838–39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **October 2, 2026**

/s/ Barbara A. McAuliffe
UNITED STATES MAGISTRATE JUDGE